IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Giovanni Q. Plater, et al., | Case No. 3:06 CV 2070 |
| Plaintiffs, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Toledo Public Schools, et al., | |
| Defendants. | |

## INTRODUCTION

Pursuant to the Court Order filed September 7, 2006 (Doc. No. 6), Plaintiff has failed to obtain legal counsel. Therefore the claims of all Plaintiffs are dismissed with the exception of Zerlena Combs, who is proceeding *pro se*. Plaintiff attended a phone conference on September 5, 2006 with the Court and defense counsel at which time she requested the Court enjoin the uniform policy demands and punishments by Toledo Public Schools (TPS).

## PRELIMINARY INJUNCTION STANDARD

The granting or denial of a preliminary injunction is within the sound discretion of the trial court. *Virginian Railway Co. v. System Federation No. 40*, 300 U.S. 515, 551 (1937). The Sixth Circuit has set forth four standards for the District Court to use in making this determination: (1) Plaintiff's likelihood of success on the merits; (2) whether Plaintiff may suffer irreparable harm absent the injunction; (3) whether granting a preliminary injunction would cause substantial harm to others; and (4) whether issuing a preliminary injunction would impact the public interest. *Abney v. Amgen, Inc.*, 443 F.3d 540, 546 (6th Cir. 2006).

**PLAINTIFF HAS NOT SHOWN THE LIKELIHOOD
OF SUCCESS ON THE MERITS**

The underlying claim in Plaintiff's preliminary injunction request is unlikely to succeed on its merits. School uniform policies in public schools are authorized by the relevant state statute, and are constitutionally permissible.

OHIO REV. CODE §3313.20(A) authorizes the Board of Education of the Toledo City School District (the Board) to "make any rules that are necessary for its government and the government of its employees, pupils of its schools, and all other persons entering upon its school grounds or premises." Pursuant to this statute, the Board adopted a Student Dress Code for its elementary, middle school and high school students (Def.'s Mem. Opp. Attach. 1(Dress Code)).

Whether the Dress Code is wise is not a question within the purview of this Court as long as the Dress Code is authorized by law. *See Wood v. Strickland*, 420 U.S. 308, 326 (1975); *Brannon v. Bd. of Educ. of Tiro Consol. Sch. Dist. of Crawford County*, 99 Ohio St. 369, 373 (1919). "Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values." *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968). "[P]ublic schools have considerable latitude in fashioning rules that further their educational mission and in developing a reasonable fit between the ends and means of their policies." *Blau v. Fort Thomas Pub. Sch. Dist.*, 401 F.3d 381, 393 (6th Cir. 2005).

The Sixth Circuit recently addressed the constitutionality of mandatory uniforms in a public school district. *Id*. The *Blau* court held that neither the First Amendment free speech clause, nor substantive-due-process rights were violated by a uniform policy similar to the TPS Dress Code. *Id.* at 385-86.

2

Under the First Amendment, "the claimant at a minimum must show that the desired conduct (e.g., the desired clothing) can fairly be described as 'imbued with elements of communication' which 'convey[s] a particularized message' that will 'be understood by those who view it.'" *Id.* at 389 (internal citations omitted). The desire to express school-age individuality, through wearing clothing one thinks look nice and feel good in, while important to a student and a method of early self-expression, are not protected by the First Amendment. *See id.* at 389-90. "[The] First Amendment does not protect such vague and attenuated notions of expression - namely, self-expression through any and all clothing that a 12-year old may wish to wear on a given day." *Id.* at 390; *see also Zalewska v. County of Sullivan, N.Y.*, 316 F.3d 314, 320 (2d Cir. 2003) ("a person's choice of dress or appearance in an ordinary context does not possess the communicative elements necessary to be considered speech-like conduct entitled to First Amendment protection"). Plaintiff fails to indicate a particularized message and, therefore, Plaintiff's success on the merits of her claim is unlikely. Plaintiff also fails to establish the "'substantial' amount of protected conduct engaged in by others" necessary to assert a facial overbreadth claim. *Blau,* 401 F.3d at 390. Plaintiff fails to present an underlying First Amendment claim on which success on the merits is likely.

Plaintiff is also unlikely to succeed on a claim of due process violations under the Fourteenth Amendment. The right to wear clothing of one's choice is not a fundamental right, but is subject to a rational basis review. *Id.* at 393-95. Plaintiff does not indicate any reason why developing a uniform policy to support the educational process does not have a rational basis, and therefore it is unlikely that Plaintiff would succeed on a due process claim.

Neither is Plaintiff likely to succeed on a claim that fundamental rights of a parent to direct the education of their children have been violated by the TPS Dress Code. Parents have a fundamental

3

right "to make decisions concerning the care, custody and control of their children." *Troxel v. Granville*, 530 U.S. 57, 60 (2000). This includes a fundamental right to decide whether to send their child to a public school, but it does not include a fundamental right "to direct *how* a public school teaches their child." *Blau*, 401 F.3d at 395. State and local authorities generally make the decisions on public education issues, "[w]hether it is the school curriculum, the hours of the school day, school discipline, the timing and content of examinations, the individuals hired to teach at the school, the extracurricular activities offered at the school or . . . a dress code." *Id.* at 395-96. In the absence of a fundamental right, Plaintiff must show the Dress Code fails a rational-basis review. As Plaintiff has not articulated any reason why the Dress Code is not rationally based, Plaintiff's success is unlikely.

Additionally, Plaintiff's claim that the disciplinary process at TPS violates due process is unlikely to succeed. There are two types of due process claims, substantive and procedural. Plaintiff would likely fail on both. "In the context of school discipline, a substantive due process claim will succeed only in the 'rare case' where there is 'no rational relationship between the punishment and the offense.'" *Seal v. Morgan*, 229 F.3d 567, 575 (2000). While Plaintiff cites numerous disciplinary actions, she fails to show an absence of a rational relationship between the conduct and disciplinary action to satisfy the due process requirement.

Plaintiff also contends procedural due process violations occurred and requests that parents receive notification of the alleged events before disciplining the student. Students who face suspensions have property rights under the Fourteenth Amendment, but these rights only include oral or written notice to the student, and if the student denies the charges, the student receives the school's explanation of the evidence and the opportunity to tell his or her side of the story. *Buchanan v. City of Bolivar, Tenn.*, 99 F.3d 1352, 1359 (6th Cir. 1996); *C.B. v. Driscoll*, 82 F.3d 383, 386 (11th Cir.

4

1996) ("once school administrators tell a student what they heard or saw, ask why they heard or saw it, and allow a brief response, a student has received all the process that the Fourteenth Amendment demands"). As a general rule, the hearing should be given before removal from the school unless the student's presence is dangerous or disruptive. *Id.* Plaintiff's request that parents be notified prior to discipline is not required to satisfy due process, and therefore due process is unlikely to be violated.

Plaintiff requests an injunction against discrimination in food types in TPS cafeterias. Plaintiff asserts that students who are eligible for free or reduced price meals under the National School Lunch Act, 42 U.S.C. § 1751 et seq. (NSLA), are served inferior breakfast and lunches compared to students who pay cash for their meals. Plaintiff wants the fee reduction under the NSLA to apply to all food served in TPS cafeterias. Under the NSLA, reduced fee meals must meet minimum nutritional requirements but otherwise the schools have discretion to plan the meals. 42 U.S.C. §1758. Schools are not required to offer all food in the cafeteria at reduced prices. While the lunch provided under NSLA and the lunch purchased by a student with cash may be different, there appears to be no evidence showing a violation of the National School Lunch Act. Additionally, discrimination based upon financial need is not a suspect classification in an Equal Protection analysis under the Fourteenth Amendment, and is subject to a rational basis analysis. *Harris v. McRae*, 448 U.S. 297, 322 (1980). A rational basis for the type of meals for the reduced fee and free meals at TPS has not been disputed by Plaintiff.

Each of the claims raised by Plaintiff are unlikely to succeed on the merits and therefore do not support the issuance of a preliminary injunction.

**PLAINTIFF HAS NOT SHOWN IRREPARABLE INJURY**

This Court also considers the irreparable injury to Plaintiff, harm to others from the injunction, and whether public interest supports the injunction. Plaintiff has not shown why she would suffer irreparable injury. She has been offered free of charge clothing that complies with the uniform policy, which would keep the students in the classroom and learning, and even if Plaintiff was able to show irreparable harm generally from the discipline policy, this factor is outweighed by the strong likelihood that Plaintiff would not succeed on the merits. Additionally, while neither party addressed public interest or harm to others from the injunction, "the [Supreme] Court has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools." *Tinker v. Des Moines Indep. Community Sch. Dist.*, 393 U.S. 503, 507 (1969). "Without first establishing discipline and maintaining order, teachers cannot begin to educate their students." *New Jersey v. T.L.O.*, 469 U.S. 325, 350 (1985) (Powell, J., concurring). An injunction against disciplining students before notifying parents by U.S. mail substantially undermines the authority of the school and its interest in maintaining discipline and order. In light of the above, Plaintiff's claims are insufficient to support a preliminary injunction for the Dress Code and disciplinary policy at TPS.

Plaintiff makes additional requests for preliminary injunctions, but these requests were abandoned by Plaintiff during a phone conference with the Court and opposing counsel on September 5, 2006. Moreover, these requests raise issues that do not involve Constitutional or legal violations, but instead are objections to the policy decisions of TPS. As noted by the *Epperson* Court, this Court is not to intervene in the daily operations of schools. *Epperson*, 393 U.S. at 104. Therefore, these requests also do not support a preliminary injunction.

**CONCLUSION**

Based on the foregoing, injunctive relief is DENIED.

Further, this case is referred to United States Magistrate Vernelis Armstrong for further handling and determination of all pretrial issues, and filing of a Report and Recommendation, or such other action as appropriate. In the event the Magistrate determines that cause exists to refer a matter back for hearing and/or determination by a District Judge, such matter shall be referred by Court Order to the undersigned.

IT IS SO ORDERED.

s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

October 26, 2006